UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOMINIQUE WILSON,

                   Plaintiff,

      v.

TOWN OF CHEEKTOWAGA,
CHEEKTOWAGA POLICE
DEPARTMENT, and POLICE OFFICER
TIMOTHY TURNBULL,

               Defendants.

_____

**DECISION AND ORDER**

1:18-CV-01255 EAW

## INTRODUCTION

Plaintiff Dominique Wilson ("Plaintiff") commenced this action alleging claims for "false arrest, false imprisonment; assault & battery; defamation of character, humiliation, malicious prosecution and, violation of 4th and 5th amendment rights." (Dkt. 1 at 4). Presently before the Court is a motion for summary judgment filed by defendants Town of Cheektowaga, Cheektowaga Police Department, and Police Officer Timothy Turnbull (collectively "Defendants"). (Dkt. 75).

For the reasons explained below, Defendants' motion for summary judgment is granted.

## BACKGROUND

The following facts are taken from Defendants' statement of material facts (Dkt. 77) and the exhibits submitted by the parties. Plaintiff did not submit an Opposing Statement of Material Facts, and therefore the factual statements contained in Defendants'

statement may be "deemed admitted for purposes of the motion" if they are supported by admissible evidence in the record. *See* L. R. Civ. P. 56(a)(2) ("Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in [an] opposing statement."). Although a district court should not deem unopposed facts admitted when those facts are unsupported by the record, *Holtz v. Rockefeller & Co*., 258 F.3d 62, 73-74 (2d Cir. 2001), a district court has discretion to deem facts admitted for lack of compliance with its local rules, *see N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc*., 426 F.3d 640, 648-49 (2d Cir. 2005) (holding it within district court's discretion to deem the moving party's statement of material facts admitted where the opposing party "offered mostly conclusory denials" and "failed to include any record citations" contrary to the district's local rules). The Court has accepted Defendants' factual assertions to the extent they are supported by the evidence of record and otherwise not directly controverted by facts and exhibits in the record. Where a fact is disputed, the Court has noted the same.

On November 9, 2015, Plaintiff Dominique N. Wilson ("Plaintiff") was arrested by Defendant Timothy Turnbull ("Defendant Turnbull"), a police officer with Defendant Town of Cheektowaga Police Department. (Dkt. 77 at ¶¶ 1, 28, 34). Plaintiff had been a New York State Trooper for approximately two years at the time of her arrest. (*Id.* at ¶ 3).

Plaintiff's arrest arose from a domestic incident with her then fiancé, Micaiah Abram ("Abram"), with whom Plaintiff lived at 1440 Harlem Road in the Town of Cheektowaga, New York. (*Id.* at ¶ 2). Specifically, just before noon on the morning of

November 9, 2015, Plaintiff called 911 to report that Abram refused to move his car, which was blocking her car in their driveway. (*Id.* at ¶ 5). When Abram attempted to enter the house to obtain his car keys, Plaintiff locked Abram out of the house. (*Id.* at ¶ 6). Plaintiff located Abram's handgun from a closet in the home and brought it out to the driveway. (*Id.* at ¶¶ 7, 8).

Kevin Hufford ("Hufford") lived across the street from Plaintiff at 1445 Harlem Road and was outside doing yard work on November 9, 2015. (*Id.* at ¶¶ 10, 11). Hufford observed Abram kicking the door of the residence at 1440 Harlem Road and heard yelling and screaming. (*Id.* at ¶¶ 12, 13). He observed Plaintiff and Abram arguing and then saw Plaintiff enter the home and come back out with a silver handgun. (*Id.* at ¶ 21). Hufford reported that Plaintiff was yelling at Abram while pointing the gun at her head and waving it in the air. (*Id.* at ¶¶ 22, 23). Hufford then called the police. (*Id.* at ¶ 24).

Defendant Turnbull was dispatched to the scene and began to interview the individuals present. (*Id.* at ¶ 28). Both Plaintiff and Abram acknowledged that Plaintiff had removed the silver handgun from the house. (*Id.* at ¶¶ 29, 30). Neither Plaintiff nor Abram provided a formal statement to law enforcement. (*Id.* at ¶¶ 31, 32). Supervisors from the Defendant Town of Cheektowaga Police Department and New York State Police arrived at the scene and Defendant Turnbull was directed to place Plaintiff under arrest and charge her with reckless endangerment in the second degree. (*Id.* at ¶¶ 33, 34). Defendant Turnbull located and secured the handgun and Plaintiff was booked, arraigned, and released on her own recognizance around 2:00 p.m. on November 9, 2015. (*Id.* at ¶¶ 36, 37).

Defendant Turnbull was later instructed by the Erie County District Attorney's office to add a charge of menacing in the second degree.  (*Id.* at ¶ 38).  Plaintiff was arraigned on the menacing charge on January 6, 2016.  (*Id.* at ¶ 39).

On June 1, 2016, the New York State Police issued three charges against Plaintiff for violating New York State Police Regulations against committing a crime, engaging in misconduct, and acting in a manner to bring discredit upon the division.  (*Id.* at ¶ 40).  Plaintiff was suspended by the New York State Police for 60 days without pay and returned to probationary status.  (*Id.* at ¶ 41).

Prosecution of the criminal charges against Plaintiff ended with both charges being dismissed on November 21, 2016.  (*Id.* at ¶ 42; Dkt. 76-9 at 2-3).

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 8, 2018.  (Dkt. 1).  Defendants filed their answer on February 5, 2019.  (Dkt. 2).  On June 21, 2022, Defendants filed the instant motion for summary judgment.  (Dkt. 75).  Plaintiff filed her opposition on August 19, 2022 (Dkt. 84; Dkt. 85), and Defendants filed their reply on September 2, 2022 (Dkt. 86).  On September 6, 2022, Plaintiff filed a sur-reply.  (Dkt. 87).[1]

---

[1]     Although the Court issued a briefing schedule indicating that Plaintiff could file reply papers if she filed a cross-motion in response to Defendants' motion for summary judgment (Dkt. 81), Plaintiff did not cross-move.  Therefore, the sur-reply filed by Plaintiff on September 6, 2022, was filed without leave of Court.  Local Rule 7 provides that "[r]eply papers filed without prior notice or authorization may be stricken."  L.R. Civ. P. 7(a)(1).  Nonetheless, the Court has considered the submission.

- 4 -

## DISCUSSION

**I.     Legal Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654

F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.     Defendants Are Entitled to Summary Judgment

Defendants seek summary judgment on all of Plaintiff's claims, contending that there are no genuine issues of material fact establishing any liability of Defendants.  They further argue that the affirmative defense of qualified immunity justifies dismissal of Plaintiff's claims.  The Court agrees.[2]

### A.     False Arrest/False imprisonment

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims because they had probable cause to arrest her.  In particular, Defendants contend that it is undisputed that Plaintiff dangerously and recklessly handled a firearm in the course of a domestic dispute, justifying her arrest.

The Court agrees with Defendants that summary judgment on Plaintiff's false arrest and false imprisonment claims is warranted.  "False arrest and false imprisonment overlap; the former is a species of the latter."  *Cohen v. United States*, No. 21-CV-10774 (LJL), 2022 WL 16925984, at *12 (S.D.N.Y. Nov. 14, 2022) (quoting *Wallace v. Kato*, 549 U.S.

---

[2]     Although not raised by Defendants, the Court notes that Defendant Town of Cheektowaga Police Department is not a proper party in this case.  *See Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990) (granting motion to dismiss police department, and explaining that "[i]n New York, departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town").

384, 388 (2007)); *see also Williams v. Olsen*, No. 118CV01446 (LEK/DJS), 2022 WL 16572043, at *14 (N.D.N.Y. Nov. 1, 2022) ("In New York, the tort of false arrest is synonymous with false imprisonment."). "A claim for false arrest under § 1983 looks to state law as a starting point to determine the elements of [the] claim. . . ." *Potter v. Port Jervis Police Dep't*, No. 19-CV-10519 (CM), 2020 WL 528823, at *4 (S.D.N.Y. Feb. 3, 2020). Under New York law, a plaintiff claiming false arrest or false imprisonment "must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id*. at *5 (alteration omitted and quoting *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012)).

Of particular relevance here, "[a]n arrest is privileged if it is based on probable cause." *Id*.; *see also Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (holding that probable cause to arrest is "an absolute defense to a false arrest claim"); *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (quotation and citation omitted)). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested *has committed or is committing a crime*." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (citation omitted); *see also Cain v. Cnty. of Niagara, New York*, No. 20-CV-1710S, 2022 WL 2134288, at *6 (W.D.N.Y. June 14, 2022) ("Probable cause is determined from the

totality of the circumstances . . .").  On a Fourth Amendment claim, the central question is whether probable cause existed to arrest an individual for any crime, not whether probable cause existed with respect to each individual charge.  *See Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2004).  Moreover, "[i]n assessing probable cause, a court must consider [only] those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty."  *Sagy v. City of New* York, No. 18-CV-1975 (HG), 2022 WL 6777602, at *3 (E.D.N.Y. Oct. 11, 2022) (quotations and internal citations omitted).  Indeed, "[o]nce an officer has probable cause, he or she is 'neither required nor allowed' to continue investigating, sifting and weighing information." *Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006) (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir.1989)); *see also Alexis v. Town of Cheektowaga*, No. 17-CV-985S, 2021 WL 5239900, at *5 (W.D.N.Y. Nov. 10, 2021) ("Once probable cause has been established, a 'police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997))).

"Officers may rely on hearsay to establish probable cause, and a court 'may properly consider such hearsay' at summary judgment."  *Dorsey v. Gannon*, No. 20CV1525(PK/CPK), 2022 WL 4660555, at *3 (E.D.N.Y. Sept. 30, 2022) (quoting *Martinez v. City of New York*, 564 F. Supp. 3d 88, 99 (E.D.N.Y. 2021)); *see also Druss v. Muscatella*, No. 20-CV-06341 (PMH), 2022 WL 3701085, at *5 (S.D.N.Y. Aug. 26, 2022) ("It is well-settled that hearsay can be used to establish probable cause." (quotation and citation omitted)).  In addition, "[w]hen a victim or eyewitness reports a crime, probable

cause generally will be found to exist based upon the eyewitness's testimony unless circumstances raise doubt as to the veracity of the eyewitness's statement." *Alexis*, 2021 WL 5239900, at *5 (citations omitted)); *see also Washington v. Napolitano*, 29 F.4th 93, 110 (2d Cir. 2022) ("[I]t is well settled that an officer can rely upon a statement by a putative victim or eyewitness to establish probable cause unless the officer has reason to doubt the witness's veracity.").

The elements of reckless endangerment in the second degree, a class A misdemeanor, set forth in New York Penal Law § 120.20, are satisfied when a person "recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." N.Y. Penal Law § 120.20. With respect to this charge:

> New York law further provides that "[a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." N.Y. Penal Law § 15.05 (McKinney 2005). Thus, a person is guilty of reckless endangerment in the second degree under New York law if he both engages in conduct which creates a substantial risk of serious physical injury to another person and is aware of and consciously disregards that risk.

*Winn v. McQuillan*, 390 F. Supp. 2d 385, 390-91 (S.D.N.Y. 2005); *see also Green v. City of Yonkers*, No. 10 cv 3653 (JFK), 2012 WL 554453, at *4 (S.D.N.Y. Feb. 21, 2012) ("Under New York law, the crime[ ] of reckless endangerment . . . do[es] not contemplate . . . injury as a condition precedent."); *People v. Davis*, 72 N.Y.2d 32, 36 (1988) ("[R]eckless endangerment is not an intent crime. Instead, determining whether the crime

was committed entails an objective assessment of the degree of risk presented by defendant's reckless conduct.") (internal quotations and citations omitted).

Here, it is undisputed that law enforcement officers responded to Plaintiff's residence after calls by Plaintiff and Hufford, who each reported the existence of an argument at the residence between Plaintiff and Abram.  According to the Domestic Incident Report (Dkt. 76-9 at 54-55), the Cheektowaga Police Department dispatcher was informed by the reporting neighbor that a male and female were outside fighting and the female was "waiving [sic] around a handgun."  (*Id*. at 54).  The incident report reflects that upon investigation by officers, Abram reported that after he tried to force entry into the home, Plaintiff "then took his firearm and went outside and threatened to damage his car," and that Plaintiff acknowledged taking the handgun outside to give it to Abram.  (*Id.*).

In addition, Hufford signed a sworn statement (Dkt. 76-7) on the day of the incident, indicating:

> Regards the . . . apparent domestic dispute I observed on the 9th day of November.  I was outside doing yard work when I heard a loud noise from across the street at 1440 Harlem Rd.  I looked across the street and observed the male who lives there kicking in his side door and I heard yelling and screaming.  The male entered his house and it got quiet for a few minutes.  I then heard the female from across the street at 1440 Harlem screaming.  I looked across the street and observed the female and the male arguing outside their home.  I saw the female go inside the house and come out with a silver handgun.  She had the gun pointed at her head and she was yelling at the male.  She then started to waive [sic] the gun around as she was yelling at the male.  I immediately called the police.  The female then went back inside the house with the gun and came out again.  When she came back out I did not see the gun.  I then saw the police arrive.

(*Id*. at 48).   While neither Plaintiff nor Abram provided a formal statement to the investigating officers, a silver handgun was located and retrieved from the premises.  (*See* Dkt. 77 at ¶¶ 31-32, 36).

Plaintiff seemingly argues that because Defendant Turnbull did not personally witness the events at issue, his ability to assess the existence of probable cause was handicapped.  She also argues that Hufford never made any specific statement that Plaintiff intimidated Abram, made Abram afraid, or that Plaintiff put Abram or any other person in a dangerous position that might cause physical injury.  But officers routinely make arrests without witnessing the conduct at issue firsthand and instead, must rely on the totality of the circumstances to determine whether probable cause exists.  Defendant Turnbull had eyewitness information from a neighbor who reported seeing Plaintiff introduce a gun into a heated domestic dispute, point the gun to her head, and wave the gun around while screaming at Abram.  It is reasonable to conclude that such conduct raises a legitimate risk of grave consequences.  In addition, in corroboration of Hufford's statements, a gun consistent with his description was located and secured at the premises.  No evidence has been presented that would have caused Defendant Turnbull to doubt Hufford's credibility, nor have any material factual disputes been presented that challenge Hufford's version of the pertinent events.  Any argument by Plaintiff relating to allegations of hearsay by Hufford misconstrues the appropriate standard for consideration of hearsay on a claim like this one at this stage of the proceedings and is without merit.

In sum, even viewing the evidence in the light most favorable to Plaintiff, considering the totality of the circumstances, the undisputed evidence establishes that

Defendant Turnbull reasonably believed that Plaintiff created a substantial risk of serious physical injury to another person and was aware of and consciously disregarded that risk. In other words, Plaintiff's arrest was supported by probable cause. *See Higginbotham v. Sylvester*, 741 F. App'x 28, 30 (2d Cir. 2018) (affirming summary judgment finding probable cause existed to arrest plaintiff for reckless endangerment in second degree where plaintiff, while working as a cameraman filming a heated protest, climbed on top of a telephone booth in a tight crowd and refused to come down); *Jiang v. Corpuz*, No. 19-CV-05664 (RPK), 2022 WL 4539425, at *5 (E.D.N.Y. Sept. 28, 2022) (granting summary judgment where "officers had arguable probable cause to arrest plaintiff for 'recklessly engag[ing] in conduct which creates a substantial risk of serious physical injury to another person,' N.Y. Penal Law § 120.20," by closely driving at high speed towards an individual walking who was forced to jump out of the way); *Barnett v. City of Yonkers*, No. 15-CV-4013 (KMK), 2018 WL 4680026, at *7 (S.D.N.Y. Sept. 28, 2018) (granting summary judgment and finding officers had probable cause to arrest plaintiff for reckless endangerment in the second degree where a witness reported that plaintiff carried large containers of fuel into a basement and the scent seeped through the building, holding that "[t]he fact that no one was injured does not change the analysis"); *see also People v. Ramirez*, 103 A.D.3d 444, 444 (1st Dep't 2013) (finding probable cause to arrest for second-degree reckless endangerment where "[t]he police observed defendant's car traveling more than 80 miles per hour and cutting off other cars"); *People v. Hagood*, 93 A.D.3d 533, 534 (1st Dep't 2012) (finding probable cause to arrest for reckless endangerment in second degree where defendant rode his bicycle on crowded sidewalk and

endangered pedestrians), *leave to appeal denied*, 19 N.Y.3d 973 (2012); *In re William H.*, 264 A.D.2d 676, 677 (1st Dep't 1999) ("throwing of firecrackers directly in front of a moving police van, thereby creating the risk of a vehicular accident as well as other risks, gave rise to probable cause to arrest for reckless endangerment in the second degree").

Relatedly, even if the Court were to conclude actual probable cause was lacking, Defendants alternatively argue that they are entitled to qualified immunity on Plaintiff's false arrest and imprisonment claims as a matter of law.  *See Triolo v. Nassau Cnty.*, 24 F.4th 98, 107 (2d Cir. 2022) ("Even where actual probable cause does not exist, an officer may be entitled to qualified immunity on a § 1983 false arrest claim if his actions were objectively reasonable or if 'arguable probable cause' existed at the time of the arrest."). Qualified immunity "shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, ___U.S. ___, 142 S. Ct. 9, 11 (2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  To constitute a clearly established right, courts look at prior precedent to determine whether "it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, ___U.S. ___, 142 S. Ct. 4, 7 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).  Because the doctrine of qualified immunity "affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability," *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)), the court must

use "a deliberately 'forgiving' standard of review" in determining its application, *id.* (quoting *Amore*, 624 F.3d at 530).

"Without a doubt, the right not to be arrested without probable cause is clearly established." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). Nonetheless, "[a]n officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had arguable probable cause to arrest the plaintiff." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Washington,* 29 F.4th at 105 ("An arresting officer is entitled to qualified immunity even if probable cause is lacking 'so long as "arguable probable cause" was present when the arrest was made.'" (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016))), *cert. denied*, No. 22-80, 2022 WL 17408172 (Dec. 5, 2022); *Adebiyi v. City of New York*, No. 13-CV-480 (WFK) (CLP), 2014 WL 4922888, at *5 (E.D.N.Y. Sept. 30, 2014) ("[a]n officer is entitled to qualified immunity if he can establish that there was 'arguable probable cause' to arrest" (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). Arguable probable cause is an "analytically distinct test for qualified immunity" that "is more favorable to the officers than the one for probable cause." *Escalera*, 361 F.3d at 743. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

Here, on the instant record, the Court concludes that it was objectively reasonable for Defendant Turnbull to believe that probable cause existed, or at the very least for

officers of reasonable competence to disagree on whether probable cause existed to arrest Plaintiff for reckless endangerment in the second degree.[3]   In other words, a reasonable officer would conclude that there was probable cause to arrest an individual who an eyewitness reported was involved in a heated argument and who waved a firearm in a reckless and dangerous manner during that argument, especially where the firearm at issue was recovered at the scene and where the individual confirmed the report that she removed the firearm from the home during the argument.   As a result, Defendants are entitled to qualified immunity on Plaintiff's claims for false arrest and false imprisonment.   *See Morgan v. City of Utica, New York*, No. 620CV1424(MAD/ML), 2022 WL 14760151, at *5 (N.D.N.Y. Oct. 25, 2022) (finding probable cause to arrest but noting that "[a]lternatively, there was, at the very least, arguable probable cause to arrest Plaintiff, and, therefore, Defendant is entitled to qualified immunity as to this claim").

---

[3]     Plaintiff contends that Lieutenant Timothy Owens' testimony during the New York State Police administrative proceeding that he could not specifically identify any Penal Law violation that would address the introduction of a firearm into a domestic situation (Dkt. 84-1 at 142) was a concession by Lieutenant Owens that Plaintiff did not commit any crime.   Not only does Plaintiff's contention not alter the Court's analysis, but Plaintiff has misstated the testimony.   Lieutenant Owens was asked to identify the facts supporting his opinion that Plaintiff's actions involving the use of a firearm in this particular instance constituted criminal conduct, and he testified that, "[b]ased on the fact that the weapon was being carelessly waved about in various directions; based on the fact that it was used, it was in her hand when she shoved Micaiah; and based on the fact that it was somewhat of a pseudo-violent domestic, whereby, Micaiah kicked the door in; yelling and screaming; climbing on vehicles.   And that's not the type of situation where a firearm should be introduced, due to the fact that it can quickly escalate into a fatal situation for somebody involved."   (*Id.* at 143-44).   The Court accordingly rejects Plaintiff's contention that Lieutenant Owens' testimony somehow establishes a basis to conclude that no reasonable officer could believe he had grounds to arrest Plaintiff on the facts presented.

Finally, to the extent that Plaintiff contends that the dismissal of the criminal proceedings against her prevents this Court from finding the existence of probable cause through the doctrine of collateral estoppel, the argument is misplaced. "The doctrine of collateral estoppel provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit.'" *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 424 (S.D.N.Y. 2012) (quoting *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011)); *see also Tounkara v. Republic of Senegal*, No. 21CV8027LAKRWL, 2022 WL 17826422, at *9 (S.D.N.Y. Dec. 20, 2022) ("[T]he principle of collateral estoppel 'prevents the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding.'" (quoting *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir. 1991)); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002) ("Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.").

Not only is there a lack of privity between the parties in the criminal proceeding and the instant action, but the dismissal of the criminal charges against Plaintiff in state court did not conclusively determine that there was a lack of probable cause to arrest her. The Cheektowaga Town Court decision of November 21, 2016, dismissed the charges on the basis of the legal insufficiency of the information and speedy trial grounds. (*See* Dkt. 76-9 at 2-3); *see also People v. Batashure*, 75 N.Y.2d 306, 309 (1990) (noting that "legal sufficiency and reasonable cause are analytically distinct concepts" and "[e]vidence can

satisfy either standard without necessarily satisfying the other"); N.Y. Crim. Pro. § 70.10 (legally sufficient evidence is non-hearsay competent evidence which taken as true would establish every element or the offense charged, whereas reasonable cause exists if it was reasonably likely that the person committed the offense and the evidence relied upon "may include or consist of hearsay").  Because the two proceedings did not contain the same parties or decide the same questions, the doctrine of collateral estoppel is inapplicable on these facts and does not save Plaintiff's claims.

Accordingly, summary judgment is warranted in Defendants' favor on Plaintiff's claims based on false arrest and false imprisonment.[4]

### B.    Malicious Prosecution

To state a claim for malicious prosecution under § 1983, a plaintiff must allege that her Fourth Amendment rights were implicated by criminal proceedings initiated or continued against her, with malice and without probable cause, and that the proceedings were favorably terminated.  *Thompson v. Clark*, ___ U.S. ___, 142 S. Ct. 1332, 1336

---

[4]    Although never clearly articulated by Plaintiff in any of her filings, she has presumably named the municipal defendants based on a theory of vicarious liability for Defendant Turnbull's alleged actions—which would fail for the same reasons that the claims against Defendant Turnbull fail.  Moreover, with respect to any claims asserted pursuant to § 1983, a municipal defendant can be held liable only for its own actions or policies and Plaintiff has not alleged the existence of any municipal policy or custom that resulted in any tortious action.  *See Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021) (noting that § 1983 claim against municipal defendant requires that a plaintiff establish: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury").  Thus, this is an alternative independent basis to dismiss the claims alleged against the municipal defendants.

(2022).  Likewise, "[t]o establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010)).  Because "[t]he elements of malicious prosecution under section 1983 are 'substantially the same' as the elements under New York law . . . 'the analysis of the state and the federal claims is identical.'" *Bailey v. City of N.Y.*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) (quoting *Boyd v. City of N.Y.,* 336 F.3d 72, 75 (2d Cir. 2003)).

### 1.    Probable Cause

"In the context of malicious prosecution claims, the relevant probable cause determination is whether there was probable cause 'to believe [the arrestee] could be successfully prosecuted.'"  *Sagy*, 2022 WL 6777602, at *5 (quoting *Posr v. Court Officer Shield*, No. 207, 180 F.3d 409, 417 (2d Cir. 1999)); *see also Delanuez v. City of Yonkers*, No. 20 CIV. 4476 (PED), 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28, 2022) ("The Second Circuit has also cautioned courts not to conflate probable cause to arrest with probable cause to believe that [a plaintiff] could be successfully prosecuted as in a malicious prosecution action, [o]nly the latter kind of probable cause is at issue[.]" (quotations and citations omitted)).

As explained by the court in *Sagy*:

> "If probable cause existed at the time of arrest," then, "it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (internal quotation marks omitted). Thus, a "plaintiff must show that the defendants learned of some 'intervening facts' undermining probable cause 'between arrest and initiation of prosecution, [or the] claim[ ] of malicious prosecution cannot survive.'" *Soto v. City of New York*, 132 F. Supp. 3d 424, 452 (E.D.N.Y. 2015) (quoting *Thomas v. City of New York*, 562 F. App'x 58, 60 (2d Cir. 2014)) (alterations in original).

2022 WL 6777602, at *5. "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of [the] intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

Defendants argue that they are entitled to summary judgment on Plaintiff's malicious prosecution claim because there existed probable cause to prosecute her for the charges and alternatively, that they are entitled to qualified immunity. The Court agrees.

The undisputed evidence establishes Defendant Turnbull signed the information/complaint charging Plaintiff with reckless endangerment in the second degree on the date of Plaintiff's arrest—November 9, 2015—and sometime between that date and January 6, 2016, he added a charge of menacing in the second degree[5] at the direction of

---

[5]     Menacing in the second degree, a class A misdemeanor, provides that a person is guilty of menacing in the second degree where, as is relevant here, "[h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 120.14. The same set of facts support both charges in this case. *See LaFontaine v. City of New York*, No. 08 CIV. 1555(SHS), 2009 WL 3335362, at *5 (S.D.N.Y. Oct. 14, 2009) (granting summary judgment where officer "interviewed the complainant, who reported that plaintiff had pulled out a gun and waved it at him during a dispute" and "[t]his information, which Officer Bencosme testified he had no reason to doubt, was enough to

the District Attorney's office.  (*See* Dkt. 76-9 at 5-6; Dkt. 76-10 at 112).  On August 10, 2016, Plaintiff filed a motion to dismiss the criminal charges, which was granted on November 21, 2016.

For the same reasons and based on the same evidence described above, the Court concludes that there was ample evidence to conclude that Plaintiff could be successfully prosecuted for the charges against her.  Plaintiff's only argument advanced in opposition to the summary judgment motion directed to the malicious prosecution claim is that Defendant Turnbull did not personally witness Plaintiff's alleged criminal conduct (*see* Dkt. 85 at 16)—but for the reasons outlined above, Hufford provided a detailed account of the dangerous activity that he witnessed, the account was corroborated both by the recovery of the firearm at the scene and Plaintiff's admission that she removed the firearm from the home, and there is no evidence that would have caused Defendant Turnbull to doubt Hufford's credibility.  The fact that the charges were ultimately dismissed does not negate that conclusion.  Indeed, the November 21, 2016 decision of the Cheektowaga Town Court relied upon an affidavit of Abram in reaching the conclusion that the information was not legally sufficient (Dkt. 76-9 at 3), but that affidavit was not created until well after Defendant Turnbull's initiation of the charges in this case—in August 2016 (*id*. at 43)—and the undisputed facts establish that at the time of the arrest Abram refused to provide any statement to the police (Dkt. 77 at ¶ 32).

---

establish a reasonable likelihood that plaintiff had committed the offense of Menacing in the Second Degree").

Moreover, even had Plaintiff identified any evidence to suggest that probable cause dissipated post-arrest, Defendants would nevertheless be entitled to qualified immunity. Similar to a false arrest claim, "[a] police officer likewise is entitled to qualified immunity on a malicious prosecution claim if there was 'arguable probable cause' at the time the criminal proceeding commenced and continued."  *Morgan*, 2022 WL 14760151, at *6 (quoting *Betts v. Shearman*, 751 F.3d 78, 82, 83 (2d Cir. 2014)).  Here, even if lacking actual probable cause, there existed arguable probable cause sufficient to justify the prosecution of the charges instituted against Plaintiff.

In addition to the facts highlighted above establishing probable cause for the charge of reckless endangerment in the second degree, it is undisputed that Defendant Turnbull was directed by the District Attorney's office to arrest Plaintiff on the charge of menacing in the second degree.  In *Dale v. Kelley*, 908 F. Supp. 125 (W.D.N.Y. 1995), *aff'd*, 95 F.3d 2 (2d Cir. 1996), the court found "it compelling that [Defendant] was acting at the direction of an Assistant District Attorney," stating that "[w]hile he is not *per se* qualifiedly immune from liability simply because the prosecutor, in essence, declared that probable cause existed, . . . I find that on these facts [Defendant's] actions were objectively reasonable." 908 F. Supp. at 137-38.  The *Dale* court explained the reasoning for that conclusion was because "as a practical matter, police officers must be able to rely on the advice of prosecutors," and in that case it was "clear that [Defendant's] actions were motivated by the District Attorney's order and not on his own initiative."  *Id.*; *see also Thompson v. Kline*, 504 F. Supp. 3d 200, 210 (W.D.N.Y. 2020) (finding qualified immunity and holding that "the fact that Trooper Collings consulted with ADA Casella prior to arresting

- 21 -

Thompson supports the reasonableness of his actions"); *Strawn v. Holohan*, No. 104-CV-1292 GLS/DRH, 2008 WL 65586, at *6 (N.D.N.Y. Jan. 4, 2008) (granting summary judgment on malicious prosecution claim on qualified immunity grounds where "the fact that [Defendant] consulted with the District Attorney's office prior to [Plaintiff's] arrest, while not dispositive of the issue, is a factor supporting the reasonableness of [Defendant's] actions").  Here, Plaintiff does not dispute that the charge of menacing in the second degree was issued at the direction of the District Attorney's office, and not on Defendant Turnbull's own initiative.  These facts, taken together with the information set forth above, are sufficient to support a finding of arguable probable cause.

Accordingly, because "the undisputed facts establish that [Plaintiff]'s arrest and prosecution were supported by arguable probable cause, . . . the individual defendants are entitled to qualified immunity on [Plaintiff's] false arrest and malicious prosecution claims as a matter of law."  *Diop v. City of New York*, 50 F. Supp. 3d 411, 425 (S.D.N.Y. 2014); *see also Castro v. Cnty. of Nassau*, 739 F.Supp.2d 153, 172 (E.D.N.Y. 2010) (finding that "there are no triable issues of fact as to whether [the defendant] had arguable probable cause," and thus, the defendant was "entitled to qualified immunity on the false arrest and malicious prosecution claims"); *Hardin v. Meridien Foods*, No. 98 CIV. 2268 (BSJ), 2001 WL 1150344, at *6 (S.D.N.Y. Sept. 27, 2001) (stating that "the Court applies the same standard used to evaluate qualified immunity in the false arrest context" as in the malicious prosecution context).

### 2.     Actual Malice

Independently, the record is completely devoid of any factual basis to find malice on the part of Defendant Turnbull in initiating the prosecution.  "[M]alice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  *Lowth*, 82 F.3d at 573 (quotation and citation omitted). "Actual malice is lacking when a police officer reasonably chooses between conflicting evidence." *Suren v. City of New York*, No. 19CV2659(KAM/RER), 2022 WL 4466098, at *11 (E.D.N.Y. Sept. 26, 2022) (granting summary judgment on malicious prosecution claim where "Plaintiffs have not proffered evidence and the Court has not found any in the record that the Officer Defendants had any personal animus toward Plaintiff or that they were motivated by improper motive or something other than a desire to see the ends of justice served." (quotation and citation omitted)); *Guillen v. City of New York*, No. 19CIV5655 (JPC)(OTW), 2022 WL 4072925, at *11 (S.D.N.Y. Sept. 2, 2022) (granting summary judgment on malicious prosecution claim where there was "no evidence that the Officer Defendants had any personal animus toward Plaintiff or that they were motivated by something other than a desire to see the ends of justice served." (citation and quotation omitted)).  Here, no evidence has been adduced that would support a conclusion that Defendant Turnbull had any personal animus toward Plaintiff or improper motive in pursuing the charges against her.   Accordingly, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim.

C.     **Remaining Claims**

Finally, Defendants are entitled to summary judgment on Plaintiff's remaining

undeveloped federal claims[6] and New York state law claims for assault, battery,

humiliation,[7] and defamation.

Although Plaintiff purports to assert numerous claims in her complaint, the

complaint is wholly barren of any factual allegations underlying these claims, Plaintiff does

not argue any factual basis to sustain these claims in opposition to the instant motion except

as to the claims set forth above, and no basis supporting any additional claims is otherwise

apparent to the Court.  "A court may, and generally will, deem a claim abandoned when a

plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."

*Banyan v. Sikorski*, No. 17-CV-4942 (LJL), 2021 WL 2156226, at *2 (S.D.N.Y. May 27,

2021) (finding summary judgment appropriately granted based on the plaintiff's "failure

to respond to arguments set forth in a moving party's brief").  Here, while Plaintiff makes

cursory reference to constitutional violations and has a section in her brief entitled,

"Battery," (Dkt. 85 at 14), she cites only legal boilerplate and provides no discussion of

---

[6]     Plaintiff's complaint identifies 42 U.S.C. §§ 1983 and 1988, as well as violations of
the Fourth, Fifth, Sixth, and Fourteenth Amendments.  (Dkt. 1 at II(A)).

[7]     It is not clear what claim Plaintiff is attempting to assert in the claim she designates
as humiliation, but the Court presumes it to be intentional infliction of emotional distress.
*See Stuto v. Fleishman*, 164 F.3d 820, 828 (2d Cir. 1999) (noting that intentional infliction
of emotional distress claim may be supported by allegations of public humiliation); *Allen
v. St. Cabrini Nursing Home*, No. 00 CIV 8558 CM, 2001 WL 286788, at *7 (S.D.N.Y.
Mar. 9, 2001) ("There is no cause of action in New York for public humiliation or
embarrassment."), *aff'd*, 64 F. App'x 836 (2d Cir. 2003).

any claims beyond those for false arrest, false imprisonment, and malicious prosecution. Further, no rational jury could find, on the record before the Court, that Plaintiff had sufficiently asserted claims for any other federal claims or state law tort claims.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 75) is granted.  The Clerk of Court is directed to close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 6, 2023
       Rochester, New York